related DDJ

**FILED**
CLERK, U.S. DISTRICT COURT

Oct. 6, 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DTA _____ DEPUTY

no cv30

ROBERT LACAMBRA
INDIGENT LITIGATOR
NO CURRENT ADDRESS
robertsjustice@live.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| ROBERT LACAMBRA | NO. 8:21-cv-01660-CAS-KES |
| Plaintiff, | **VERIFIED COMPLAINT FOR DECLARATIVE AND INJUNCTIVE RELIEF** |
| v. | |
| HOOVES LIQUOR STORE OF ORANGE AND ROBERTO GONZALES | 1. 42 USC § 1981(b) |
| | 2. Harassment |
| Defendants. | 3. Intentional Interference With Contractual Relations |
| | 4. Breach of Contract |
| | 5. Breach of Implied Covenant of Good Faith and Fair Dealing |
| | 6. Intentional Infliction of Emotional Distress |

1

1   1.    May it please the court, Plaintiff Robert Lacambra,

2   hereinafter referred to as "ROBERT," brings this civil action

3   against "Hooves Liquor Store of Orange," hereinafter referred to

4   as "HOOVES" and Roberto Gonzales hereinafter referred to as

5   "GONZALES" and collectively referred to as "DEFENDANTS." ROBERT

6   sues them individually and severally and seeks the court's

7   equitable powers to make available for him the opportunity to

8   seek justice, to right a wrong and to heal. He alleges upon

9   information and belief, except as to allegations against him, as

10  follows:

11

12                          **INTRODUCTION**

13  2.    Does your workplace guarantee a safe, a clean and a decent

14  working environment?

15  3.    This is case about the much-desired ideal of a positive and

16  profanity-free workplace, particularly if the instrument of

17  harassment is a loud and boisterous sound system controlled by

18  the management of the company. ROBERT joined Hooves Liquor Store

19  as an evening stocker of their coolers. When he started, it was a

20  quiet and relaxing place to work, until the evening manager

21  installed a speaker near his workstation, and where his

22  preference for profanity-laced tirades by gansta rappers could

23  not be escaped. After complaining about the situation to the

24  owner/operator several times, his concerns were ignored.

25  4.    On December 16, 2020 three days after the death of his

26  mother, ROBERT confronted GONZALES (EXHIBIT A), the evening

27  manager. The profanity-laced music had been going on for the

28  entire evening, but it came to a head after the rapper blurted

1    out the words "mother f*****n'" in the most irritating and

2    provoking manner. It touched a raw nerve only four days after

3    ROBERT's mother's passing. The final conversation that evening

4    sought the night manager to decide between ROBERT continuing his

5    shift or him continuing with his filthy music. The manager chose

6    the music, essentially terminating ROBERT.

7    5.    ROBERT made an agreement with HOOVES, rearranging his life

8    to meet his obligation. But just yesterday (the 5th of October),

9    the owner/operator (EXHIBIT B) asked him to remove his

10   vehicles (EXHIBIT C) from the parking lot on Monday the 11th of

11   October. Otherwise, it will be towed away. The complications

12   include the fact that ROBERT is homeless, and his vehicles are

13   his abode. The unfair termination and the threat of having his

14   vehicles towed away breaks a promise made to each other. For

15   ROBERT, unless the court intervenes, the consequences of what may

16   happen next is irreparable harm. His vehicles are inoperable and

17   unregistered. Removing it from a private lot will certainly mean

18   sleeping on the streets that evening.

19

20                         **JURISDICTION & VENUE**

21   6.    This US District Court, Central District of California has

22   subject matter jurisdiction over this action pursuant to 28 USC §

23   1343(3) in particular because of violations of the US

24   Constitution and federal statutes, specifically 42 USC § 1981 –

25   equal rights under the laws, and specifically to make and enforce

26   contracts.

27   7.    The US District Court, Central District of California has

28   supplemental jurisdiction over this action pursuant to 28 USC §

                                    3

1    1367, where the violations of state cause of action are

2    so inextricably linked with all other violations alleged.

3    8.    The US District Court, Central District of California has

4    jurisdiction over this case because of the unavailability of the

5    state courts. On motion by the OC Sheriff's Department to evade

6    discovery requests, he was determined by the Superior Court as a

7    Vexatious Litigant and effectively barred from filing cases

8    there.

9    9.    Furthermore, DEFENDANTS conduct their business in the City

10   of Orange where Hooves Liquor Store is located. DEFENDANTS have

11   had sufficient contact in this district that the exercise of

12   jurisdiction would be consistent with traditional notions of fair

13   play and substantial justice.

14

15                    **THE PARTIES TO THIS ACTION**

16                          **PLAINTIFF**

17   10.   ROBERT is a homeless litigator/advocate currently residing

18   in the City of Orange. He founded the organization

19   @RobertsJustice for the expressed purpose of bringing to the

20   social consciousness the paradox of American justice. After

21   living on the streets/vehicle for more than a decade, he has

22   reached the conclusion, in complete deference to the words of

23   Ronald Regan, that "Government is the problem." He has worked to

24   make justice available to those of limited means, power and

25   influence. He also seeks to amplify the voices of those who are

26   aggrieved yet rendered weak by their economic condition.

27   11.   As a concurrently filed "Motion Request To Proceed In Forma

28   Pauperis" shows, ROBERT lives on an income of about $4,400 per

1  year. In a legal fight against taxpayer funded entities, wealthy
2  corporations and rich individuals such as he finds himself in
3  this case, ROBERT is at an extreme disadvantage. Hence, he pleads
4  for the court's equitable powers to provide for him, and no less
5  to others like him, a fair proceeding to arrive upon substantial
6  justice.

7

8                              **DEFENDANTS**

9  12.   Hooves Liquor Store of Orange ("HOOVES") is a specialty
10  liquor store situated next door to Chapman University's main
11  campus, in the City of Orange California. They offer a wide
12  selection of wines, spirits, beers, mixed-drinks and other
13  beverages with or without alcohol content. Their offering is
14  complemented by all other products that are normally found in a
15  convenient store.

16  13.   A corporation status check with the California Department
17  of Corporations yielded no matches. However, ROBERT will seek
18  leave of court to amend his complaint to insert the precise facts
19  as soon as its corporate name, status and other pertinent
20  information is ascertained.

21  14.   Roberto Gonzales is the evening manager who terminated
22  ROBERT on the evening of 16th of December 2020. Not much is known
23  about him at this moment, except he just recently moved into the
24  Hooves Liquor Store premises recently. However, ROBERT will seek
25  leave of court to amend his complaint to insert the precise facts
26  as soon as pertinent information is ascertained.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GENERAL ALLEGATIONS**

15.   ROBERT incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth in this paragraph.

16.   At all times herein mentioned, HOOVES and their agents had an obligation not to violate any laws of the United States of America, the State of California including regulations that govern their respective industry as it specifically applies to their respective business and industry.

17.   At all times herein mentioned, HOOVES and their agents had an obligation to abide by the verbal contract between ROBERT and HOOVES, without any prejudice to either party who have essentially rearranged their lives accordingly based on the agreement.

**CHRONOLOGY OF EVENTS**

18.   08/21/18 - ROBERT begins work at Hooves Liquor Store as an evening stocker, earning $10 per hour.

19.   09/18/18 - ROBERT moves his '90 GMC Suburban at the Hooves Liquor Store parking lot.

20.   08/02/19 - ROBERT purchases the '98 Toyota Corolla from the nephew of Hooves Liquor Store's owner.

21.   08/05/20 - ROBERT parks his '98 Toyota Corolla at the Hooves Liquor Store parking lot.

22.   11/XX/20 - ROBERT, in November of 2020, brings to the owner's attention the unprofessional music being played at the store by GONZALES several times.

23.   12/08/20 - ROBERT brings to the owner's attention the

unprofessional music being played at the store by GONZALES.
ROBERT told the manager that he had to apologize to a mother and
son customer. He replied in an angry tone saying, "You don't have
any business talking to customers. Just do your job."

24.   12/XX/20 - ROBERT, in the succeeding days, again told the
manager that the music GONZALES plays at night is, at best
unprofessional and at worst turns customers away. The
owner/manager said that the new generation likes that kind of
music. ROBERT reminded him that young kids also enter the store
to buy confections and soda beverages. He took it under
advisement but did nothing.

25.   12/16/20 - ROBERT has a verbal confrontation with GONZALES,
gives him the option to either change the music or fire him.
You're going to have to make a decision, it's either me or the
music. "OK, if you want to go, you can go. GONZALES was not going
to change the profanity-laced music, giving ROBERT no other
choice.

26.   PRESENTLY - ROBERT continues to maintain the parking lot,
discarding things that are dumped there and sweeps it at
reasonable intervals. He serves as the watchman guarding against
illegal activities there.

27.   10/05/21 - Approximately 140PM, the owner of Hooves Liquor,
came by the parking lot where ROBERT was having lunch and told
him to remove his cars on or by Monday the 11th of October or it
will be towed.

**DISCUSSION & ANALYSIS**

**THE VERBAL AGREEMENT BETWEEN ROBERT & HOOVES**

28.   ROBERT incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth in this paragraph.

29.   ROBERT entered into an employment agreement with HOOVES as a homeless man who lives in a vehicle. On August 21, 2018, he was shopping at Hooves Liquor Store and he was approached by the owner/manager who asked him what he does for a living. ROBERT explained that he is an indigent litigator. The owner/manager then asked ROBERT if he can help him in the evenings for a couple of hours, stocking drinks in the cooler.

30.   Over time the agreement offered the parties the following provisions:

  1. ROBERT is to work two hours three evenings per week and get paid $10 per hour.

  2. ROBERT's work in the parking lot off-hours is not paid for.

  3. ROBERT is allowed to park two vehicles, a '90 GMC Suburban and a '98 Toyota Corolla at the Hooves Liquor Store parking lot.

  4. ROBERT is allowed to sleep in his vehicle there at night.

  5. ROBERT is to serve as pseudo-watchman of the property at night.

  6. ROBERT is to maintain the parking lot, removing weeds and sweeping it at reasonable intervals.

  7. ROBERT is allowed to store certain things in the parking lot, including a desk and his other personal effects that could not be stored in his vehicles.

8. ROBERT is to avail of a discount on certain products (i.e. a
   gallon of water for $2, normally $3 etc.)

9. HOOVES is to sponsor ROBERT's 24 Hours of Lemons race team
   ('98 Toyota Corolla).

### THE UNCONSCIONABILITY OF THE AGREEMENT

31.   ROBERT incorporates by reference the allegations in all
preceding paragraphs of this complaint as though fully set forth
in this paragraph.

32.   ROBERT represented that he was homeless and may have
transmitted a certain desperation. Accordingly, the HOOVES
owner/operator offered ROBERT an adhesion contract that was one-
sided and violated California labor laws over time as newly
introduced legislation increased wages gradually, to no benefit
to ROBERT. At the very least HOOVES, was obligated to increase
his wages yearly, consistent with passed legislation at the
time.

### VIOLATION OF CALIFORNIA LABOR LAWS

33.   ROBERT incorporates by reference the allegations in all
preceding paragraphs of this complaint as though fully set forth
in this paragraph.

34.   In 2018, the minimum wage for companies employing less than
25 people was $10.50. In 2019 it went up to $11. Then, in 2020 it
went up to $12. These increases happened by operation of law,
when then Gov. Edmund Brown signed legislation. (EXHIBIT D).

35.   However, ROBERT's wages did not go up and remained a steady
$10 per hour from August 2018 until December 2020. In fact, his

1    wages were never reported to the EDD (EXHIBIT E), which

2    essentially excluded him from unemployment benefits immediately

3    after his termination.

4

5                **HARASSMENT AND CONSTRUCTIVE TERMINATION**

6    36.   ROBERT incorporates by reference the allegations in all

7    preceding paragraphs of this complaint as though fully set forth

8    in this paragraph.

9    37.   From the very first day, ROBERT had sensed that GONZALES

10   was threatened by his employment at HOOVES. He was not even

11   consulted on ROBERT's hiring, breaking an unspoken rule being

12   that he is to be his supervisor.

13   38.   There was hardly any reason to find fault in ROBERT's work.

14   He was only late once in the entire duration of his employment

15   and always started working a few minutes before his official

16   start time. He was amiable and very helpful with walk-in clients.

17   The quality of his work was always beyond reproach.

18   39.   One of the things that ROBERT did on his own initiative was

19   remove a fire hazard at the parking lot by clearing boxes stored

20   beside the parking structure. This infuriated GONZALES because

21   from that point forward it required the breaking down of boxes

22   and discarding it in the trash instead of simply tossing

23   the boxes there to be picked up by an unreliable recycler.

24   Pictures are attached herewith depicting the before and after,

25   shown as EXHIBITS F & G respectively.

26   40.   In one of his retaliatory activities, he placed trash in

27   front of the trash bin the day before collection. It would be

28   stacked in such a way that when the trash collector hauls it by

the use of his forked machine, the stacked trash ended up being strewn on the floor. Because ROBERT was responsible for the parking lot, he ends up cleaning the mess. (EXHIBIT H) Another example was moving discarded furniture into the parking lot instead of the trash bin. (EXHIBIT I).

41.   But, ROBERT never complained about the work, which infuriated GONZALES more. Determined to have ROBERT either terminated or for him to quit, GONZALES devised situations that sought to make ROBERT's work unbearable. This included installing a sound system close to where he worked and playing profanity-laced music that dealt with cesspool experiences of life, including being demeaning to women.

42.   These are just two examples of excerpted rap lyrics played that very evening. A more complete list will be uncovered during discovery and inserted on to the complaint thereon.

(WARNING EXPLICIT LANGUAGE)

43.   BITCH PLEASE BY SNOOP DOG & XZIBIT

Come f*ck with a nigga and do it "Doggystyle"
I'll be gentle, sentimental
Shit, we fucked in the rental Lincoln Continental
Coast-to-coast, L.A. to Chicago
I get this pussy everywhere that I go
Ask the bitches in your hood cause they know
Bitch please!
Get down on your god damn knees
For this money, chronic, clothes and weed
Look, you fuckin with some real O.G's

44.   REAL NIGGA ROLL CALL BY LIL JON & THE EAST SIDE BOYS

Yeah! Right about now (whats up)
It's time for the real nigga roll call
Now when you hear your city or state being called
You put your motherfuckin' middle finger up in this bitch
ATL, St. Louis, Alabama, Chicago, The Carolina's, Nap Town

11

DC, The Bay Area, VA, Miami, New York niggas,
Texas, you know!
Y'all niggas can't fuck wit my nigga's ho! (pussy nigga)
Y'all niggas can't fuck wit my nigga's ho! (pussy nigga)

45.   ROBERT was a frequent guest at Chapman University's library where he does his pro se legal work. He was concerned that students and faculty will hear the music while he was on staff and think of him less, jeopardizing his welcome at the school.

**ECONOMIC INTEREFERENCE**

46.   ROBERT incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth in this paragraph.

47.   GONZALES had been hell bent on removing ROBERT as a member of HOOVES' staff. Without saying it, they simply were too different in personal choices. Except for that last time when ROBERT said, "I will see you in court, asshole," he strives to remove cursing from his vocabulary. Until then, it was doubtful that GONZALES ever heard ROBERT use profanity.

48.   GONZALES, in the capacity of management, had an obligation to make an accommodation for ROBERT. Many rap songs have cleaned-up versions that pass FCC scrutiny, and are being played by radio stations. The loudness of the music and the objectionable lyrics served to harass ROBERT, particularly after voicing his objection to both GONZALES and the manager/owner of HOOVES.

49.   In failing to make reasonable accommodations and constructively terminating ROBERT, GONZALES interfered with a contract that ROBERT had with HOOVES to an extent that he was not able to avail of its benefits.

12

**MALICIOUS, OPPRESSIVE AND FRAUDULENT CONDUCT**

50.   ROBERT incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth in this paragraph.

51.   GONZALES' dislike of ROBERT had been apparent from the beginning, after the owner/manager hired him without as much as a ceremonial conversation. One evening GONZALES showed up at work and there was ROBERT who appeared, in GONZALES' mind, to be poised to take his job of stocking coolers.

52.   GONAZALES made ROBERT's job more complicated than it had to be, introducing projects that ate into ROBERT's 2-hour stocking shift. It was calculated to prevent ROBERT from finishing his work of stocking up the coolers.

53.   For instance, a black-water plumbing problem during the day was left for ROBERT to deal with ensuring that the work of stocking would not be finished for the next day's shift. There were numerous micro-events such as these, which will be added to the First Amended Complaint complete with pictures after the first round of discoveries.

54.   Nevertheless, ROBERT persevered, finishing his work and the made-up projects. This took away the opportunity for GONZALES to complain about his work.

55.   His final ploy to remove ROBERT came by the way of the installed speakers and the profanity-laced music that was so objectionable, something had to give. All such events that were detrimental to ROBERT was calculated and committed with deliberate indifference.

**EXTREME AND OUTRAGEOUS CONDUCT**

56.   ROBERT incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth in this paragraph.

57.   The California Supreme Court codified when extreme and outrageous conduct exists, holding:

> *"A cause of action for intentional infliction of emotional distress exists when there is "`"`(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'"'"' (Potter v. Firestone Tire & Rubber Co. (1993) 6 Cal.4th 965, 1001 [25 Cal.Rptr.2d 550, 863 P.2d 795]; see Christensen v. Superior Court (1991) 54 Cal.3d 868, 903 [2 Cal.Rptr.2d 79, 820 P.2d 181].) A defendant's conduct is "outrageous" when it is so "`"extreme as to exceed all bounds of that usually tolerated in a civilized community."'" (Potter, at p. 1001.) And the defendant's conduct must be "`"intended to inflict injury or engaged in with the realization that injury will result."'" (Ibid.) (Hughes v. Pair, 209 P. 3d 963 - Cal: Supreme Court 2009 at 1051)*

58.   ROBERT's homelessness was obvious to DEFENDANTS. They see him at the HOOVES parking lot almost every day. They are also aware of ROBERT's continued struggle to get his vehicles road worthy. They are also aware that if ROBERT moves any of his vehicles off a private lot to the public roads, they will be towed, and he will be required to sleep on the streets.

59.   That is exactly the result that they are seeking.

60.   The possibility of ROBERT losing his vehicles and his evening shelter will most certainly require him to lose everything he owns and sleep on the streets. DEFENDANT HOOVES' and GONZALES' actions are extreme and outrageous conduct that

14

caused ROBERT severe physical, emotional and psychological

pain.


**INVOCATION OF 42 USC § 1981**

61.   ROBERT invokes the power of this court to force DEFENDANT

to perform or modify the agreement on this complaint hereon,

consistent with the court's finding of whether ROBERT has the

right to demand a decent work environment. 42 USC § 1981(b)

provides in relevant parts:

> (b) "Make and enforce contracts" defined
> For purposes of this section, the term "make and enforce
> contracts" includes the making, performance, modification,
> and termination of contracts, and the enjoyment of all
> benefits, privileges, terms, and conditions of the
> contractual relationship.


**CAUSES OF ACTION AS AGAINST DEFENDANT GONZALES**

**COUNT ONE**

(Harassment)

62.   ROBERT incorporates by reference the allegations in all

preceding paragraphs of this complaint as though fully set forth

in this paragraph.

63.   ROBERT claims that he was subjected to harassment based on

his age and relative personal preferences at HOOVES and that this

harassment created a work environment that was hostile,

intimidating, offensive, oppressive, or abusive.

64.   To establish this claim, ROBERT will prove that this

harassment created a work environment that was hostile,

intimidating, offensive, oppressive, or abusive.

   1. That ROBERT was a person providing services under a contract

with HOOVES;

2. That ROBERT was subjected to harassing conduct because he
   was of a certain age with certain traditional sensibilities;

3. That the harassing conduct by GONZALES was severe
   and pervasive;

4. That a reasonable person in ROBERT's circumstances would
   have considered the work environment to be hostile,
   intimidating, offensive, oppressive or abusive;

5. That ROBERT considered the work environment to be hostile,
   intimidating, offensive, oppressive, or abusive;

6. That GONZALES, ROBERT's supervisor, engaged in the conduct
   with the approval of the owner/operator;

7. That ROBERT's management knew or should have known of the
   conduct and failed to take immediate and appropriate
   corrective action;

8. That ROBERT was harmed; and

9. That the conduct was a substantial factor in causing
   ROBERT's harm.

**COUNT TWO**

(Intentional Interference With Contractual Relations)

65.   ROBERT incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth in this paragraph.

66.   ROBERT claims that GONZALES intentionally interfered with the contract between ROBERT and HOOVES. To establish this claim, ROEBRT will prove all of the following:

1. That there was a contract between ROBERT and HOOVES;

16

2. That GONZALES knew of the contract;

3. That GONZALES' conduct prevented performance or made performance more expensive or difficult;

4. That GONZALES intended to disrupt the performance of ROBERT's work and knew that disruption of his performance was certain or substantially certain to occur;

5. That ROBERT was harmed; and

6. That GONZALES' conduct was a substantial factor in causing ROBERT's harm.

### CAUSE OF ACTION AS AGAINST DEFENDANT HOOVES

### COUNT THREE

(Breach of Contract)

67.    ROBERT incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth in this paragraph.

68.    To recover damages from HOOVES for breach of contract, ROBERT must prove all of the following:

1. That ROBERT and HOOVES entered into a contract;

2. That ROBERT did all, or substantially all, of the significant things that the contract required him to do;

3. That HOOVES failed to create and maintain a work environment that was free from hostility, intimidation, offensiveness, oppressiveness, or abuse.

4. That ROBERT was harmed; and

5. That HOOVES'  breach of contract was a substantial factor in causing ROBERT's harm

**COUNT FOUR**

(Breach of Implied Covenant of Good Faith and Fair Dealing)

69.    ROBERT incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth in this paragraph.

70.    In every employment contract and agreement there is an implied promise of good faith and fair dealing. This implied promise means that neither the employer nor the employee will do anything to unfairly interfere with the right of the other to receive the benefits of the employment relationship. Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. Generally speaking, it means being faithful to one's duty or obligation. However, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

70.    ROBERT claims that HOOVES violated the duty implied in their employment agreement to act fairly and in good faith. To establish this claim, ROBERT will prove all of the following:

1. That ROBERT and HOOVES entered into an
   employment relationship;
2. That ROBERT substantially performed his job duties as
   prescribed by the agreement;
3. That all conditions required for HOOVES's performance were
   not performed;
4. That HOOVES' refusal to create a work environment that was
   free from free from hostility, intimidation, offensiveness,
   oppressiveness, or abuse prevented ROBERT from receiving the
   benefits under the agreement;

18

5. That by doing so, HOOVES did not act fairly and in good
   faith; and

6. That ROBERT was harmed by HOOVES' conduct.

### COUNT FIVE

(Intentional Infliction of Emotional Distress)

71.   ROBERT incorporates by reference the allegations in all preceding paragraphs of this complaint as though fully set forth in this paragraph.

72.   ROBERT claims that HOOVES' conduct caused him to suffer severe emotional distress. To establish this claim, ROBERT will prove all of the following:

1. That HOOVES' conduct was outrageous;

2. That HOOVES intended to cause ROBERT emotional distress;

3. That ROBERT suffered severe emotional distress; and

4. That HOOVES' conduct meant to cause sleeping on the street
   was a substantial factor in causing ROBERT's severe
   emotional distress

### REQUEST FOR RELIEF

73.   WHEREFORE, Plaintiff requests judgment against Defendants, as set forth herein below.

a) Enter a preliminary injunction prohibiting the moving,
   transferring or towing of ROBERT's vehicle parked in HOOVES'
   parking lot situated in 493 N Glassell St, Orange, CA 92866.
   This will include: a '90 GMC Suburban and '98 Toyota Corolla
   owned by ROBERT.

b) Enter an order for an accommodation of ROBERT's vehicles/shelter to remain on the parking lot for a reasonable period of time or for as long as this case is being deliberated.

c) Pursuant to the Counts 1,2,3,4,5 grant compensatory penalties according to proof;

d) Pursuant to California Civil Code §3294, grant punitive damages according to proof;

e) Enter such orders required to restore money and/or property, which may have been lost or displaced by means of these unlawful acts, as provided in Title 16 of the California Code of Regulations and other applicable laws;

f) Award Plaintiff his costs of suit;

g) Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

74.   ROBERT hereby demand a trial by jury in this action.

Respectfully submitted,

Dated: October 6, 2021

/s/ Robert Lacambra

ROBERT LACAMBRA - Plaintiff, In Pro Per

20

**VERIFICATION**

I, Robert Lacambra, am the Plaintiff in the above-entitled action. I have read the foregoing "Verified Complaint" and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed at the City of Orange, California.

Dated:  October 6, 2021

/s/ Robert Lacambra

ROBERT LACAMBRA - Plaintiff, In Pro Per

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT – SOUTHERN DIVISION
LACAMBRA V. HOOVES LIQUOR OF ORANGE ET AL.


**VERIFIED COMPLAINT**

**EXHIBITS LIST**


EXHIBIT A – PICTURE OF ROBERTO GONZALES, SUPERVISOR

EXHIBIT B – PICTURE OF ROBER RASHID, OWNER/OPERATOR OF HOOVES

EXHIBIT C – ROBERT'S '90 GMC SUBURBAN & '98 TOYOTA COROLLA

EXHIBIT D – MINIMUM WAGE LEGISLATION

EXHIBIT E – EDD WAGE REPORT

EXHIBIT F – BEFORE – BOXES AS FIRE HAZARD

EXHIBIT G – AFTER – ROBERT CLEARS FIRE HAZARD

EXHIBIT H – STREWN TRASH CAUSED BY GONZALES

EXHIBIT I – FURNITURE DUMPED IN THE PARKING LOT

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C



# EXHIBIT D

Amends General
Minimum Wage
Order and IWC
Industry and
Occupation Orders



# **OFFICIAL NOTICE**
# California Minimum Wage
## MW- 2019

| EFFECTIVE DATE | Employers with 26 or More Employees* | Employers with 25 or Fewer Employees * |
|---|---|---|
| January 1, 2019 | **$12.00** | **$11.00** |
| January 1, 2020 | **$13.00** | **$12.00** |

| PREVIOUS YEARS | | |
|---|---|---|
| January 1, 2017 | **$10.50** | **$10.00** |
| January 1, 2018 | **$11.00** | **$10.50** |

*Employees treated as employed by a single qualified taxpayer pursuant to Revenue and Taxation Code section 23626 are treated as employees of that single taxpayer.

To employers and representatives of persons working in industries and occupations in the State of California:

**SUMMARY** OF **ACTIONS**

TAKE NOTICE that on April 4, 2016, the Governor of California signed legislation passed by the California Legislature, raising the minimum wage for all industries. (SB 3, Stats of 2016, amending section 1182.12. of the California Labor Code.) Pursuant to its authority under Labor Code section 1182.13, the Department of Industrial Relations amends and republishes Sections 2, 3, and 5 of the General Minimum Wage Order, MW-2017. Section 1, Applicability, and Section 4, Separability, have not been changed. Consistent with this enactment, amendments are made to the minimum wage, and the meals and lodging credits sections of all of the IWC's industry and occupation orders.

This summary must be made available to employees in accordance with the IWC's wage orders. Copies of the full text of the amended wage orders may be obtained by ordering on-line at www.dir.ca.gov/WP.asp, or by contacting your local Division of Labor Standards Enforcement office.

**1. APPLICABILITY**

The provisions of this Order shall not apply to outside salespersons and individuals who are the parent, spouse, or children of the employer previously contained in this Order and the IWC's industry and occupation orders. Exceptions and modifications provided by statute or in Section 1, Applicability, and in other sections of the IWC's industry and occupation orders may be used where any such provisions are enforceable and applicable to the employer.

**2. MINIMUM W AG ES**

Every employer shall pay to each employee wages not less than those stated above, on each effective date, per hour for all hours worked.

**3. MEALS AND LODGING CREDITS - TAB LE**

When credit for meals or lodging is used to meet part of the employer's minimum wage obligation, the amounts so credited pursuant to a voluntary written agreement may not be more than the following

| EFFECTIVE: | JANUARY 1, 2017 | | JANUARY 1, 2018 | | JANUARY 1, 2019 | | JANUARY 1, 2020 | |
|---|---|---|---|---|---|---|---|---|
| For an employer who employs: | 26 or More Employees | 25 or Fewer Employees | 26 or More Employees | 25 or Fewer Employees | 26 or More Employees | 25 or Fewer Employees | 26 or More Employees | 25 or Fewer Employees |
| **LODGING** | | | | | | | | |
| Room occupied alone | $49.38/ week | $47.03/ week | $51.73/ week | $49.38/ week | $56.43/ week | $51.73/ week | $61.13/ week | $56.43/ week |
| Room shared | $40.76/ week | $38.82/ week | $42.70/ week | $40.76 week | $46.58/ week | $42.70/ week | $50.46/ week | $46.58/ week |
| Apartment – two thirds (2/3) of the ordinary rental value, and in no event more than: | $593.05/ month | $564.81/ month | $621.29/ month | $593.05/ month | $677.75/ month | $621.28/ month | $734.21/ month | $677.75/ month |
| Where a couple are both employed by the employer, two thirds (2/3) of the ordinary rental value, and in no event more than: | $877.27/ month | $835.49/ month | $919.04/ month | $877.26/ month | $1002.56/ month | $919.02/ month | $1086.07/ month | $1002.56/ month |
| **MEALS** | | | | | | | | |
| Breakfast | $3.80 | $3.62 | $3.98 | $3.80 | $4.34 | $3.98 | $4.70 | $4.34 |
| Lunch | $5.22 | $4.97 | $5.47 | $5.22 | $5.97 | $5.47 | $6.47 | $5.97 |
| Dinner | $7.09 | $6.68 | $7.35 | $7.01 | $8.01 | $7.34 | $8.68 | $8.01 |

Meals or lodging may not be credited against the minimum wage without a voluntary written agreement between the employer and the employee. When credit for meals or lodging is used to meet part of the employer's minimum wage obligation, the amounts so credited may not be more than the amounts stated in the table above.

**4. SEPARABILITY**

If the application of any provision of this Order, or any section, subsection, subdivision, sentence, clause, phrase, word or portion of this Order should be held invalid, unconstitutional, unauthorized, or prohibited by statute, the remaining provisions thereof shall not be affected thereby, but shall continue to be given full force and effect as if the part so held invalid or unconstitutional had not been included herein.

**5. AMENDED PROVISIONS**

This Order amends the minimum wage and meals and lodging credits in MW-2017, as well as in the IWC's industry and occupation orders. (See Orders 1-15, Secs. 4 and 10; and Order 16, Secs. 4 and 9.) This Order makes no other changes to the IWC's industry and occupation orders.

**These Amendments to the Wage Orders shall be in effect as of January 1, 2019.**

Questions about enforcement should be directed to the Labor Commissioner's Office. For the address and telephone number of the office nearest you, information can be found on the internet at www.dir.ca.gov/DLSE/dlse.html or under a search for "California Labor Commissioner's Office" on the internet or any other directory. The Labor Commissioner has offices in the following cities: Bakersfield, El Centro, Fresno, Long Beach, Los Angeles, Oakland, Redding, Sacramento, Salinas, San Bernardino, San Diego, San Francisco, San Jose, Santa Ana, Santa Barbara, Santa Rosa, Stockton, and Van Nuys.

# EXHIBIT E

California Labor and Workforce Development Agency



**Employment
Development
Department**
State of California

Gavin Newsom, Governor

California Labor and Workforce Development Agency



July 20, 2021

ROBERT LACAMBRA
655 S. MAIN ST SUITE 200 #160
ORANGE, CA 92867

## RESPONSE TO REQUEST FOR WAGE INFORMATION

We were not able to process your request for wage history information received
**07/17/21**, for **ROBERT LACAMBRA**, Social Security Number XXX-XX-**8831**, for the
following reason(s):

☐  Full Social Security Number (SSN) is required to process your request.

☐  Your signature is required to process your request.

☐  Name and/or SSN are illegible.

☐  Wage history prior to **YEAR** is no longer available.

☐  An Authorization for Release of Records, DE 5600, is required to release
information to a third-party.

☒  No employer wages were reported to the EDD for this name and SSN for
requested quarters.

Please provide the missing information and resubmit your request by fax to
(916) 449-1994 or mail to address shown below.

If you have any questions regarding this letter, please leave us a message on our
Document Retrieval line at (916) 653-1672.

Document Retrieval/ SM

**CONFIDENTIALITY NOTICE:** This document including any attachments, may contain confidential information solely for the use
of the intended recipient(s). Any disclosure, distribution, or unauthorized use of this confidential information is prohibited, and
may subject you to criminal and/or civil penalties. If you are not the intended recipient, please notify the sender immediately by
telephone and destroy all documents.



**UNITED STATES POSTAL SERVICE.**

PLAZA ORANGE
308 W CHAPMAN AVE
ORANGE, CA 92856-9998
(800)275-8777

07/27/2021                              11:57 AM

| Product | Qty | Unit Price | Price |
|---------|-----|------------|-------|
| Envelope 6X9 | 1 | $0.49 | $0.49 |
| Love 2021 | 1 | $0.55 | $0.55 |

Grand Total:                             $1.04

Cash                                     $1.10
Change                                  -$0.06

********************************************
USPS is experiencing unprecedented volume
       increases and limited employee
    availability due to the impacts of
   COVID-19. We appreciate your patience.
********************************************

# EXHIBIT F



# EXHIBIT G



# EXHIBIT H



# EXHIBIT I

